United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MICHAEL L. BEST,

Petitioner,

v.

DIRECTOR, CALIFORNIA DEPARTMENT OF CORRECTIONS,

Respondent.

No. C 02-2113 JSW (PR)

**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS**

Michael L. Best ("Petitioner"), a California prisoner proceeding pro se, filed this habeas corpus petition pursuant to 28 U.S.C. § 2254. The Court ordered Respondent to show cause why the petition should not be granted. Respondent filed an answer supported by a memorandum and exhibits, and Petitioner filed a traverse as well as a memorandum of points and authorities in support of the traverse. Because Respondent's answer failed to address two of Petitioner's claims, the Court ordered further briefing. Respondent then filed a supplemental answer addressing the previously overlooked claims, and Petitioner filed a supplemental traverse. Petitioner also filed a motion to expand the record, which the Court provisionally granted, and to which Respondent has raised objections. For the reasons discussed below, the petition is denied on the merits.

United States District Court
For the Northern District of California

**PROCEDURAL BACKGROUND**

In 1998, a jury in Alameda County Superior Court convicted Petitioner of robbery (Count One) with findings that he inflicted great bodily injury on the victim, that she was over 65 years of age and that Petitioner knew or should have known that the victim was 65 years of age or older. The jury also found guilty on a separate count of attempted robbery (Count Two). In a bifurcated proceeding, the jury found six prior "strike" convictions to be true. With these prior convictions serving as enhancements, the trial court sentenced Petitioner to a term of 65 years to life in state prison. Petitioner filed a direct appeal and the California Court of Appeal affirmed the judgment of the trial court in an unpublished decision on May 8, 2000. (Answer, Ex. 6.) Petitioner then appealed to the Supreme Court of California, which denied the petition for review without comment on July 26, 2000. *Id.,* Ex. 8. After filing state habeas petitions in the Superior Court and the Court of Appeal, Petitioner filed a habeas petition in the California Supreme Court, which summarily denied the petition without citation or comment on April 17, 2002. *Id.*, Exh. 10.

Petitioner filed this action on April 30, 2002. His federal habeas petition contains four claims for relief: First, he alleges that he was deprived of effective assistance of counsel where his trial counsel failed to suppress a tainted and suggestive identification; failed to interview or call known alibi witnesses; failed to defend against the use of prior convictions as sentence enhancers; and failed to move to excuse a juror for misconduct. Second, Petitioner claims ineffective assistance of appellate counsel for failure to raise the issues relating to his trial counsel on appeal. Third, Petitioner contends that his trial was fundamentally unfair as a result of the trial court's failure to grant his motion to sever the two counts brought against him. Fourth, Petitioner alleges that the admission at trial of evidence linking Petitioner to criminal activity was prejudicial error. Petitioner brought his third and fourth claim on direct appeal, and received a written decision by the California Court of Appeal. This Court finds that Petitioner is not entitled to habeas relief on any of his claims, and denies the petition in its entirety.

United States District Court
For the Northern District of California

## FACTUAL BACKGROUND[1]

On August 11, 1997, at approximately 3:30 p.m., Elaine Goodman, who was 74 years old, was walking on MacArthur Boulevard toward Maybelle Avenue in Oakland. She saw a man up ahead who had just missed a bus. The man walked toward her and grabbed her purse which she was carrying in her left hand. He took hold of the handle of the purse and pulled hard. Goodman held on to her purse and fell hard to the ground. She felt hurt but continued to hold on to her purse. The assailant continued to struggle with her and dragged her on the sidewalk about three to four feet. He managed to get the purse away from Goodman and fled. Goodman suffered fractures to her left shoulder and arm and was hospitalized for six days. A couple of weeks after the incident, Goodman attended a lineup and identified Petitioner as the perpetrator of the robbery.

At about 2:00 p.m. on August 26, 1997, Grace Kanouse was walking on Redding Street pushing a shopping cart, having just left the Lucky store. As she walked toward 39th Avenue, a young woman approached her and asked Kanouse if she could help her. Kanouse thanked her and declined. The young woman walked past Kanouse and then Kanouse heard her say, "Just a minute." Kanouse stopped. The young woman came back to her, grabbed for her cane and then started to pull at Kanouse's purse. Kanouse screamed for help and a couple from across the street yelled, "Leave her alone." The young woman continued to hit Kanouse a couple of times and then started to walk toward 38th Avenue.

Officer Wolvington was on a bicycle at the intersection of 39th Avenue and MacArthur when he heard screaming from the area of 39th and Redding. He responded and saw an African-American woman striking Kanouse. By the time he arrived at the scene, however, the African-American woman was fleeing. Kanouse pointed her out, telling Wolvington that the woman had just tried to take her purse. Wolvington saw the African-American woman get into the passenger side of a car. Wolvington, riding his

---

[1] This summary of facts is derived from the opinion of the California Court of Appeal. *See* Answer, Ex. 6 ("May 8, 2000 slip op.").

bicycle, pursued the car and radioed for assistance. During the pursuit, he observed that the driver was arguing with the passenger. The driver noticed Wolvington for the first time and sped away. Wolvington could not keep up with the car and broadcast over the radio that the car was heading towards the freeway. Kanouse later identified Philana B. as the woman who tried to steal her purse.

Officer Morse heard Wolvington's broadcast and drove onto the freeway where he saw the car. Another police car was already pursuing the car. In response to police pursuit, the car pulled over and stopped. Morse identified Petitioner as the driver of the car. Morse took custody of the female passenger and placed her in the back seat of the police car. When Morse asked her for name and birthdate, she responded that Petitioner, her father, wanted some money so he made her steal the lady's purse. Morse spoke to Petitioner who was handcuffed and in the back seat of Officer Perez's police vehicle. Morse asked Petitioner if he had any information about homicides that he might use to his benefit in this case. Petitioner told him that he knew where a gun was hidden that was used in a murder.

Wolvington spoke to Petitioner about the gun. Petitioner led Wolvington to the gun that was used in a murder. He told Wolvington that he had just gotten out of jail and did not want to go back.

Philana B., who was almost 17 years old at the time of the incident, testified that she is Petitioner's daughter. She testified that she was convicted of the attempted robbery of Kanouse. She was committed to the California Youth Authority and was currently in the Vision Quest program as part of that commitment. She recanted her earlier statements to the police that Petitioner told her to rob Kanouse and testified at Petitioner's trial that the robbery was her idea.

Carolyn Hubbard, an employee of Vision Quest who accompanied Philana to the trial, testified that Philana had earlier told the prosecutor that she and her father planned the robbery.

Officer Yoell testified that Philana waived her Miranda rights and told him that on

United States District Court
For the Northern District of California

the day of the incident, Petitioner was angry with her, he struck her in the eye and demanded that she get in the car with him to do some "street" robberies. When they were in the car, Petitioner pointed out Kanouse and told her to take Kanouse's purse.

Yoell further testified that he noticed similarities between the Kanouse attempted robbery and the Goodman robbery–Petitioner's physical description matched that of the perpetrator of the Goodman robbery, the incidents occurred within two blocks of each other and they were both daytime purse snatchings of elderly victims. Yoell therefore arranged a physical lineup for the Goodman robbery; Goodman identified Petitioner.

**STANDARD OF REVIEW**

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Rose v. Hodges*, 423 U.S. 19, 21 (1975). The petition in this case was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), so the provisions of that act apply to it. *See Lindh v. Murphy*, 521 U.S. 320, 327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499-1500 (9th Cir.1997) ("justice and judicial economy are better served by applying the Act to cases filed after the enactment date"), *overruled on other grounds by Lindh v. Murphy*, 521 U.S. 320 (1997). Under the AEDPA a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2001), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340. This presumption is not altered by the fact that the finding was made by a state court of appeal, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *as amended*, 253 F.3d 1150 (9th Cir. 2001). A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Id.*

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

To determine whether habeas relief is warranted, a federal court looks to the decision of the highest state court to address the merits of a Petitioner's claim in a reasoned decision. *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000); *see Packer v. Hill*, 291 F.3d 569, 578-79 ( 9th Cir.) (where State Supreme Court denied habeas petition without comment federal court looks to last reasoned decision of a state court as the basis

United States District Court
For the Northern District of California

of the state court's judgment), *rev'd on other grounds by Early v. Packer*, 537 U.S. 3 (2002). Where the state court reviews a Petitioner's federal claim on the merits but gives no reasoned explanation of its decision and there is no reasoned lower court decision on the claim, the district court applies the deferential standard of 28 U.S.C. § 2254(d) to the state court's determination but must review the record independently to decide whether the state court's decision was objectively reasonable. *See Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).

## DISCUSSION

### I. Ineffective Assistance of Trial Counsel

In Claim One of his petition for federal habeas relief, Petitioner claims that his trial counsel, Lorna Brown ("Brown"), provided ineffective assistance in violation of the Sixth Amendment. He bases his claim on Brown's failure to challenge the victim's identification, her failure to investigate and produce certain defense witnesses, her failure to challenge Petitioner's prior convictions at sentencing, and failing to seek removal of a juror for misconduct. Petitioner is not entitled to habeas relief on these claims.

#### A. Legal Standard

A violation of the Sixth Amendment right to counsel based on trial counsel's ineffectiveness requires a showing that counsel's performance was both deficient and prejudicial. *Strickland v. Washington*, 466 U.S. 668, 686-93 (1984). To establish the first prong that counsel's performance was deficient, Petitioner must show that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland*, 466 U.S. at 687-88. Second, he must establish that he was prejudiced by counsel's deficient performance, *i.e.*, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

In assessing counsel's performance, the relevant inquiry is not what defense counsel could have done, but rather whether the choices made by defense counsel were

reasonable. *See Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998). Where there are indicia of counsel's tactical reflection on the issue, judicial scrutiny of counsel's performance is deferential, with a presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *See United States v. Palomba*, 31 F.3d 1456, 1466 (9th Cir. 1994); *see also Strickland*, 466 U.S. at 689. Prejudice exists if there is a reasonable probability, in other words a probability sufficient to undermine confidence in the trial's outcome, that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694.

**B. Analysis**

In the absence of a reasoned decision by a state court addressing Petitioner's ineffective assistance of counsel claim, the Court must conduct an independent review of the record to ascertain whether the state court denial of this claim was objectively unreasonable. *Himes*, 336 F.3d at 853.

**1. Failure to Challenge Identification**

Petitioner first asserts that his trial counsel's performance was deficient because she failed "to suppress the in-court identification of Ms. Goodman." (Traverse, 6.) In support of this claim, Petitioner argues that the lineup at which Goodman identified him was impermissibly suggestive, and as a result, Goodman's in-court identification was tainted. Because this court finds that the pretrial lineup was not unduly suggestive, there was no impermissible "taint" and Petitioner's counsel was not deficient in failing to suppress the lineup identification or either of the subsequent identifications at the preliminary hearing and trial. *James v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994) (counsel's failure to make a motion to strike is not ineffective assistance if such a motion would be futile).

Due process protects against the admission of evidence deriving from suggestive pretrial identification procedures. *See Neil v. Biggers*, 409 U.S. 188 (1972). Identification testimony is inadmissible as a violation of due process only if (1) a pretrial encounter is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification, and (2) the identification is not sufficiently reliable to outweigh the corrupting effects of the suggestive procedure. *See Van Pilon v. Reed*, 799 F.2d 1332, 1338 (9th Cir. 1986).

United States District Court
For the Northern District of California

Having thoroughly reviewed the record, this court cannot agree with Petitioner that his pretrial lineup was unduly suggestive. Ms. Goodman's original description of her assailant, as reported to police a few hours after the incident, described a black man, 30-35 years old, approximately 5' 11' and 160 lbs, with short hair, a medium complexion and no facial hair. It is undisputed that Petitioner, who is 6' 2", was 40 years old and wore facial hair in the form of a goatee at the time these crimes were committed. Petitioner argues that he does not physically match this original description, except that he is also "tall, thin, black and over 30." Traverse at 17, n.2. However, the discrepancies between Petitioner and the victim's original description are irrelevant to Petitioner's claim that the lineup was unduly suggestive. An identification procedure is impermissibly suggestive when it emphasizes the focus upon a single individual thereby increasing the likelihood of misidentification. *See Bagley*, 772 F.2d at 493; *see, e.g.*, *United States v. Burdeau*, 168 F.3d 352, 357-58 (9th Cir. 1999) (finding that photo placement, hue and facial expression were insubstantial differences between defendant's photograph and the others in a photographic array and did not create an impermissible suggestion that defendant was the offender). The proper question, then, is whether the procedure at the lineup "emphasize[d] the focus" upon Petitioner to the exclusion of the other men in the lineup. *See, e.g.*, *United States v. Montgomery*, 150 F.3d 983, 992-93 (9th Cir. 1998) (showing witness photographs of defendant, giving witness own copy of photograph of defendant and allowing witness to view defendant in courtroom day before witness testified found suggestive); *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir. 1995) (identification procedures not unnecessarily suggestive where witness failed to identify defendant from photo spread but later made positive identification at pretrial suppression hearing which defendant voluntarily attended).

There was abundant evidence that the lineup was not suggestive. After Petitioner was apprehended at the scene of the Kanouse robbery, Oakland police officer Yoell noted the similarities between the Kanouse purse snatching and the Goodman robbery that had occurred a little over two weeks earlier. Officer Yoell then invited Goodman to come down to the station for a lineup. At no time prior to the lineup did Goodman see Petitioner, nor was she shown a photograph of him. Petitioner was allowed to choose the

other men to stand in the lineup and arrange their order in line. Six men were placed in the lineup, with Petitioner at the fourth position. At trial, Petitioner was allowed to and did cross-examine the victim about her pretrial and trial identifications of Petitioner and was allowed to and did cross-examine Officer Yoell about his preparation of the physical lineup. Officer Yoell testified that he followed protocol in setting up the lineup, including reading standard instructions to Goodman directing her how to indicate whether she saw her assailant, did not see her assailant, or was unsure.[2] (Rep. Tr. 458.) He specifically denied that he indicated to Ms. Goodman in any way that he believed her assailant to be in the lineup. *Id*. at 455, 469.

The only argument Petitioner makes to support an inference that this was a suggestive lineup is the matter of his relative age and height. Petitioner was neither the shortest nor the tallest man at the lineup. At 40, Petitioner was, however, the oldest. The ages of the other men ranged from 18 to 38. Because the man closest to Petitioner in age, at 38, was only 5'8" tall, Petitioner asserts that this emphasized the focus on him. However, Ms. Goodman had originally described her assailant as 5' 11" and between 30 and 35 years of age. Both men were 3 inches off the indicated height, and Petitioner was further from the indicated age range than the shorter man. The lineup was clearly not an instance in which an individual who matches the victim's original description is placed among others who do not. Moreover, this court finds that Petitioner did not "so obviously stand out as to create a substantial likelihood of misidentification." *Van Tran v. Lindsay*, 212 F.3d 1143, 1156 (9th Cir. 2000), *overruled in part on other grounds by Lockyer v. Andrade*, 538 U.S. 63 (2003).

Petitioner has not established that the lineup proceeding in which Ms. Goodman identified him as the man who robbed her was impermissibly suggestive.[3] Accordingly,

---

[2] In fact, Officer Yoell testified that Goodman appeared quite confident in identifying Petitioner at the lineup. She immediately placed two "x" marks on the identification card to indicate Petitioner. When asked why she indicated Petitioner, she responded "Because that's him." (Rep. Tr. 459.) *See also* Rep. Tr. 270 (Goodman testimony).

[3] Because the lineup was not unduly suggestive, it is not necessary to consider whether, under *Neil v. Biggers*, the in-court identifications were independently reliable. 409 U.S. 188 (1972).

neither the identification at the preliminary hearing nor that at trial was "tainted," and Petitioner's counsel was not ineffective for failing to suppress these identifications.[4]

**2. Failure to Investigate and Present Alibi and Defense Witnesses**

Petitioner complains that Brown failed to investigate and present alibi witnesses. As discussed below, Petitioner fails to demonstrate either that Brown's performance was deficient or prejudicial.

The Ninth Circuit has found a violation of the Sixth Amendment guarantee to effective assistance of counsel based on counsel's failure to investigate or present testimony from an available witness where such testimony would corroborate the defendant's testimony. *See, e.g.*, *Luna v. Cambra*, 306 F.3d 954, 961-67 (9th Cir. 2002) (finding deficient performance and prejudice where counsel failed to investigate and present testimony of corroborating alibi witnesses where defendant's only defense was his own testimony that he was home asleep at the time of the crime); *Lord v. Wood*, 184 F.3d 1083, 1093-96 (9th Cir. 1999) (finding deficient performance where counsel failed to personally interview and put on the stand three possible alibi witnesses who would have testified that they saw the victim alive the day after she purportedly was murdered); *Brown v. Myers*, 137 F.3d 1154, 1157 (9th Cir. 1998) (finding failure to investigate and present alibi witnesses to be deficient performance and prejudicial where, without corroborating witnesses, defendant's defense rested only on his own bare testimony).

**a. Alibi Witnesses**

At trial, Frederick McGowan testified as an alibi witness, stating that Petitioner was at the "Victory Outreach Man's Home," a rehabilitation residence, on August 11, 1997 at sometime after two o'clock in the afternoon. (Rep. Tr. 610-13.) McGowan testified that he remembered returning from a conference two days before, and that on Monday, August 11, 1997, he opened the gate for Petitioner who did not have his key. In closing, Brown argued that McGowan did his best to testify truthfully as to what he remembered from that

[4]In his initial petition, Petitioner appears to challenge the pretrial lineup on the additional ground that it was conducted without counsel. Later, Petitioner clarifies that this claim is not based on a denial of counsel at the pretrial lineup, but is rather a challenge to an "in-court identification tainted by, and not independent of, a lineup identification resulting from/under impermissibly suggestive circumstances." Traverse at 8.

United States District Court
For the Northern District of California

day.

In his habeas petition, however, Petitioner claims that he was tutoring children at the home of Pastor Demas Pena on August 11, 1997 at the time that the Goodman robbery (Count One) occurred, which was approximately 3:30 pm. (Pet. 4c.) Petitioner contends that Pastor Pena's wife had informed Michael Rosenblum, the defense investigator, of this fact. Petitioner also contends that he told trial counsel that several members of Philana B.'s family informed him that Philana's boyfriend, Johnny Douglas, was the true perpetrator who actually robbed Goodman and that Douglas hid items from the robbery at the home of Maria Henry, Philana's mother and Petitioner's ex-wife. *Id.* Petitioner remarks that Douglas physically resembles himself in height. *Id.* In support of these assertions, Petitioner submitted affidavits and other documents pursuant to his motion to expand the record, which the Court granted (docket no. 36).[5] Petitioner also argues that Philana and Douglas had committed robberies together prior to her arrest for the Klanouse robbery (Count Two). (Pet. 4c.)

Brown's attempt to present an alibi defense at trial does not demonstrate deficient performance as required under *Strickland*. Brown clearly made a conscious tactical decision to introduce McGowan's testimony to support an alibi defense. Furthermore, Petitioner's proposed alibi theory presented in his petition, *viz.,* that he was tutoring children at Pena's home at the time of the Goodman robbery, directly contradicts the alibi presented at trial, *viz.,* that he was at the Victory Outreach home. Having reasonably selected an alibi defense as the primary defense theory, Brown was not under a duty to investigate a conflicting alibi defense. *See Williams v. Woodford*, 384 F.3d 567, 611-12 (9th Cir. 2004).

The Court further concludes that Petitioner was not prejudiced by Brown's failure to investigate his alternate alibi theory, and thus fails to demonstrate ineffective assistance of counsel. Petitioner has proffered affidavits that purport to support his contention that he

---

[5] Respondent has lodged objections to Petitioner's expansion of the record (docket no. 38). In the interest of avoiding the necessity of a full evidentiary hearing, the Court takes the permissible intermediate step of expanding the record with documentary evidence. *Williams v. Woodford*, 384 F.3d 567, 590-91 (9th Cir. 2004). Respondent's objections are therefore overruled.

was at Pena's home on August 11, 1997. However, none of these affidavits establish Petitioner's presence there on that date. His parole officer, Muriel Martin, states that she personally visited the Pena residence on August 7 and 14, 1997, and observed that Petitioner had taken up residence in their home and at Victory Outreach. (Traverse, Ex. C3.) Martin does not, however, state that she saw Petitioner there on August 11, the date of the Goodman robbery. Similarly, Pastor Jeff Fowler's affidavit states that Petitioner was a resident at Victory Outreach in 1997, but does not attest to Petitioner's whereabouts on August 11. *Id.*, Ex. A6. Petitioner's contention that Mrs. Pena informed the defense investigator that Petitioner was at her home at the time of the Goodman robbery is not substantiated by the expanded record in the absence of an affidavit by Mrs. Pena. *See Dows v. Wood*, 211 F.3d 480, 486 (9th Cir.), *cert. denied,* 531 U.S. 908 (2000) (no showing of ineffective assistance where no evidence in the record suggests that alleged alibi witness exists and petitioner did not present affidavit from the witness to show that witness would have presented helpful testimony). Thus, there is no reasonable probability that, but for Brown's failure to investigate the alleged alibi witnesses, the result of the trial would have been different. *Strickland*, 466 U.S. at 694.

**b. Hearsay Witnesses about Other Suspect**

Petitioner further contends that he informed trial counsel that Philana's grandmother, aunt, mother, and cousin told him that Philana's boyfriend and the father of her child, Johnny Douglas, was the person who robbed Goodman and that Douglas hid items from the robbery in the home of Maria Lisa Henry, Philana's mother and Petitioner's ex-wife. Petitioner has submitted affidavits by Maria Lisa Henry (Traverse, Ex. A3); Juliet Stern, Philana's aunt, *id.*, Ex. A4; and Jaunice Henry, Philana's grandmother, *id.*, Ex. A5. Each of those affidavits relates to hearsay statements by Philana to Maria Lisa Henry that Douglas robbed an elderly woman, later identified as Goodman, and suggest that Douglas and/or Philana committed other crimes.

Petitioner also submits an affidavit by his mother, Novella Benton, stating that "in the year of 1998 as my son was going to trial for the matter he is now serving a 65 year to life sentence for, that I informed my sons [*sic*] attorney Ms. Lorna Brown, that the grandmother of the minor child involved with this matter name: Jaunice Henry informed

me via telephone that her and her daughter Lisa Henry (mother of minor child [Philana]) could identify the male person really involved with crimes being committed in the past with the minor child Philana Best." *Id.*, Ex. B1. Petitioner also offers evidence of Douglas' subsequent criminal activity.[6] The proffered arrest reports dated October 12, 2002 and November 5, 2002 describe Douglas as a Black male, age 22, six feet four inches tall, weighing 220 pounds, with a date of birth as August 26, 1980. (Traverse, Exs. D6 and D28.)

Petitioner has not provided reliable evidence to show that Douglas was the perpetrator of the Goodman robbery and that Brown was deficient in failing to investigate that defense theory. The Ninth Circuit has recognized that under California law, "evidence of third-party culpability is inadmissible 'if it simply affords a possible ground of suspicion against such person; rather, it must be coupled with substantial evidence tending to directly connect that person with the actual commission of the offense.'" *Perry v. Rushen*, 713 F.2d 1447, 1449 (9th Cir. 1983), *cert. denied*, 469 U.S. 838 (1984). The Ninth Circuit held that "[w]hen due process issues are presented, the court must balance the importance of the evidence against the state interest in exclusion," namely, to place reasonable limits on collateral issues and to avoid unsupported jury speculation about the guilt of other suspects. *Id.* at 1452-53.

Here, Petitioner's proffered hearsay evidence of Philana's statement to her mother implicating Douglas is not sufficiently weighty and probative to substantiate the collateral issue of third party culpability. Petitioner offers no compelling evidence such as a third party confession, *see id.* at 1452, or "a train of facts or circumstances" tending to point to Douglas as the guilty party. *Jones v. Wood*, 207 F.3d 557, 562 (9th Cir. 2000) (finding

---

6 Respondent objects to the expansion of the record to include these affidavits and police records, arguing that these documents constitute new evidence relative to Petitioner's ineffective assistance claim, none of which was presented to the state court. (Obj. to Order Granting Pet's Mot. to Expand R., 1-2.) In order to properly exhaust, the specific factual basis of the federal claim must be presented to the highest state court. *See Kelly v. Small*, 315 F.3d 1063, 1067-69 (9th Cir.) (finding unexhausted ineffective assistance of counsel and prosecutorial misconduct claims where specific instances of ineffectiveness and misconduct asserted in federal petition were neither in the California Supreme Court petition nor discussed by the court of appeal), *cert. denied,* 538 U.S. 1042 (2003). Even if it is unexhausted, however, the Court may deny the petition on the merits. *See* 28 U.S.C. § 2254(b)(2).

United States District Court
For the Northern District of California

under Washington law that petitioner was entitled to present evidence of third party culpability where prosecution's case was almost entirely circumstantial). Furthermore, Petitioner's proffer of documentary evidence does not implicate Douglas as the actual perpetrator of the Goodman robbery. For example, Petitioner's suggestion that Goodman mistakenly identified him as the suspect because of his physical resemblance to Douglas is unsupported by evidence that she described the robber as thirty to thirty-five years old. (Clerk Tr. 83.) Based on the date of birth recorded in his arrest reports, Douglas would have been almost seventeen years old at the time the Goodman robbery was committed on August 11, 1997 and was unlikely to have been mistaken for a thirty to thirty-five year-old man. *See* Traverse, Exs. D6 and D28.

Petitioner has failed to demonstrate that Brown's performance was deficient for failing to investigate Douglas as an alternate suspect in the Goodman robbery. The state court's denial of Petitioner's ineffective assistance of counsel claim was not contrary to, or an unreasonable interpretation of, established Supreme Court precedent. Petitioner's claim is therefore denied.

**3. Failure to Challenge Evidence of Prior Convictions**

Petitioner argues that the use of prior convictions to enhance his sentence was in error, and that his trial counsel acted unreasonably in failing to challenge the use of these convictions in the second phase of the bifurcated trial.

First, Petitioner contends that there was insufficient evidence of the six prior felony convictions for the purpose of sentencing enhancement, and were not brought and tried separately as required by California Penal Code § 667(a), which provides that a five-year enhancement shall be imposed for each prior conviction of a serious felony. (Pet. 3e.) The record reflects that the state introduced certified court records showing that Petitioner pled guilty to each of the alleged prior offenses in 1982 and 1988. (Answer, Ex. 1 (Clerk Tr.) at 253-54; Ex. 2L (Rep. Tr.) at 757-70.) Because this evidence of prior convictions was presented to and decided by a jury in a bifurcated proceeding, Brown's performance was not deficient for failing to challenge the trial of the prior convictions at sentencing.

Second, Petitioner argues that the prior plea agreements were unlawful because there was no legal basis for bypassing the prohibition on plea bargaining pursuant to section

1192.7(a) of the California Penal Code. That provision states in part that "[p]lea bargaining in any case in which the ... information charges any serious felony ... is prohibited, unless there is insufficient evidence to prove the people's case." Cal. Penal Code § 1192.7(a). Petitioner claims that trial counsel failed to investigate the validity of the alleged priors, and if she had done so, the trial court would have found the priors to be invalid for sentencing enhancement under § 667 of the California Penal Code, which provides for a five-year sentence enhancement for a prior conviction of a serious felony. (Pet. 3f.)

Petitioner refers to an unpublished, noncitable opinion of the California Court of Appeal, *People v. Delgado,* 2001 WL 1330195 (Cal.App. 4th Dist.), to support his contention that his prior plea agreements were invalid under § 1192.7(a) of the Penal Code. In *Delgado*, the Attorney General challenged the guilty plea for voluntary manslaughter entered by defendant, arguing that the deputy district attorney was prohibited under § 1192.7(a) from engaging in a plea bargain because there was sufficient evidence to convict of murder. The Court of Appeal affirmed the guilty plea, accepting the deputy district attorney's contention that there was insufficient evidence to obtain a conviction. *Id.* The Court of Appeal noted there that "Penal Code section 1192.7 places restrictions on all parties in the criminal justice system . . . to protect the public's interest in 'vigorous prosecution of the accused . . . .'" *Id.* at *2 (citation omitted).

Here, Petitioner fails to demonstrate how any of his prior plea agreements are invalidated by this statutory provision, which "is clearly designed to protect the public and not defendants." *People v. Gonzalez*, 188 Cal. App. 3d 586, 590 (Cal. App. 5th Dist. 1986). Nor does he suggest that the state courts overlooked the alleged invalidity upon approving each of those plea agreements. *See In re Alvernaz*, 2 Cal. 4th 924, 941 (1992) ("a plea bargain is ineffective unless and until it is approved by the court"). Trial counsel did not act unreasonably by not challenging the prior convictions under section 1192.7(a) of the Penal Code.

Third, Petitioner claims he was denied effective assistance of counsel "at the time of both alleged prior plea agreements" for failure to file a notice of appeal on whether those plea agreements were constitutionally valid under section 1192.7(a) of the Penal Code.

(Pet. 3e-3f.) Petitioner may not challenge his prior plea agreements on his petition for relief from the state court judgment on the current commitment offense. *See* 28 U.S.C. § 2254(a). To the extent that Petitioner claims that Brown was ineffective at sentencing for failing to challenge the prior plea agreements on the ground of ineffective assistance, Brown did not fall below an objective standard of reasonableness because there was no basis to challenge the prior plea agreements under section 1192.7(a). *Strickland*, 466 U.S. at 687-88. Petitioner is not entitled to habeas relief on these grounds.

**4. Failure to Challenge Juror for Misconduct**

Finally, Petitioner complains that his trial counsel acted unreasonably by failing to challenge a juror for misconduct after the juror admitted to reading the headline of a newspaper article concerning Petitioner's case.

**a. Legal Standard**

The Sixth Amendment guarantee of a trial by jury requires the jury verdict to be based on the evidence presented at trial. *See Turner v. Louisiana*, 379 U.S. 466, 472-73 (1965); *Jeffries*, 114 F.3d at 1490. Evidence not presented at trial is deemed "extrinsic." *See Marino v. Vasquez*, 812 F.2d 499, 504 (9th Cir. 1987). Jury exposure to extrinsic evidence deprives a defendant of the rights to confrontation, cross-examination and assistance of counsel embodied in the Sixth Amendment. *See Lawson v. Borg*, 60 F.3d 608, 612 (9th Cir. 1995). However, a petitioner is entitled to habeas relief only if it can be established that the exposure to extrinsic evidence had "'substantial and injurious effect or influence in determining the jury's verdict.'" *Sassounian v. Roe*, 230 F.3d 1097, 1108 (9th Cir. 2000) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)). Special deference must given to the trial court's impression of the impact of extrinsic evidence. *See United States v. Plunk*, 153 F.3d 1011, 1024 (9th Cir. 1998), *amended by* 161 F.3d 1195 (9th Cir. 1998), *cert. denied*, 526 U.S. 1060 (1999).

**b. Analysis**

Following the publication of a newspaper article about Petitioner's trial, the trial court determined whether any jurors had seen the article. (Rep. Tr. 362-65.) Juror No. One acknowledged that he had seen the article, but did not read it. No other jurors indicated that they had seen the article. Outside the presence of the jury, the trial court

United States District Court
For the Northern District of California

conducted a voir dire and determined that Juror No. One saw the headline about a purse snatcher and turned the page upon realizing that the article was about the defendant in trial. The trial court also determined that Juror No. One did not read the article outside the bold print on top, and did not form an opinion as to Petitioner's guilt or innocence as a result of glancing at the newspaper article. Defense counsel, Ms. Brown, asked Juror No. One about what he specifically saw in the headline, to which he responded "I think it said, 'opening testimony for purse snatcher' or something like that. That's about it." *Id.* at 365. Ms. Brown did not further challenge Juror No. One, nor did the trial court remove him from the jury.

Even relying solely on Juror No. One's own testimony, the trial court's inquiry into the matter was sufficient to determine that Juror No. One had not actually read the newspaper article. *See Smith v. Phillips*, 455 U.S. 209, 217 and n.7 (1982) (juror's own testimony as to his impartiality is not inherently suspect). "Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Id.* at 217. Based on Juror No. One's testimony that he had not read the article, there was no reason for Brown to ask the trial court to remove him from the jury or further challenge Juror No. One for misconduct. *See* Pet. 3f.

Furthermore, just before excusing the jury to conduct the voir dire of Juror No. One, the trial court clearly instructed the jury not to "read any articles about this case in the newspaper, because it's a direct contradiction of my order if you do so." (Rep. Tr. 363.) Therefore, it was unnecessary for Brown to ask the trial court to further admonish Juror No. One or the other jury members. Because Brown did not fall below an "objective standard of reasonableness," her performance was not deficient. *Strickland*, 466 U.S. at 687-88. Accordingly, the claims of ineffective assistance of trial counsel are without merit, and habeas corpus relief on those grounds is DENIED.

**II. <u>Ineffective Assistance of Appellate Counsel</u>**

Petitioner claims that he was denied the effective assistance of counsel on appeal because appellate counsel did not raise claims of ineffective assistance of counsel on direct appeal and did not augment the record.

United States District Court
For the Northern District of California

**A. Legal Standard**

The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on his first appeal as of right. *See Evitts v. Lucey*, 469 U.S. 387, 391- 405 (1985). Claims of ineffective assistance of appellate counsel are reviewed according to the standard set out in *Strickland*. *Miller v. Keeney*, 882 F.2d 1428, 1433 ( 9th Cir. 1989). In order to prevail on an ineffective assistance of appellate counsel claim, therefore, it must be established that counsel's performance was deficient, see *Strickland*, 466 U.S. at 687-88, and that there is a reasonable probability that, but for appellate counsel's unprofessional errors, the appeal would have prevailed. *Miller*, 882 F.2d at 1434 & n.9 (citing *Strickland*, 466 U.S. at 688, 694). Appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a criminal defendant. *See Jones v. Barnes*, 463 U.S. 745, 751-54 (1983); *Gerlaugh v. Stewart*, 129 F.3d 1027, 1045 (9th Cir. 1997); *Miller*, 882 F.2d at 1434 n.10. The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy. *See Miller*, 882 F.2d at 1434. Consequently, appellate counsel ordinarily meets an objective standard of competence and causes his client no prejudice where he declines to raise a weak issue. *See id.*

**B. Analysis**

In the absence of a reasoned decision by a state court addressing Petitioner's ineffective assistance of appellate counsel claim, the Court must conduct an independent review of the record to ascertain whether the state court denial of this claim was objectively unreasonable. *Himes*, 336 F.3d at 853.

Petitioner claims that he received ineffective assistance of appellate counsel, E. Evans Young, because Young failed to argue on appeal that Petitioner received ineffective assistance of trial counsel on the same basis that Petitioner challenges trial counsel's performance in this petition. (Pet. 3g.) The Court has found that trial counsel was not ineffective for failing to challenge the victim's in-court identification, failing to investigate or present alibi witnesses, failing to challenge evidence of prior convictions at sentencing, or failing to challenge a juror for misconduct. *See* Section I, *supra.* Consequently, there is no reasonable probability of a different outcome on appeal had appellate counsel raised

these issues on appeal. *Strickland*, 466 U.S. at 694. The State court's dismissal of this claim was not contrary to, or an unreasonable application of, *Strickland*. Accordingly, this claim for relief is denied.

Petitioner also claims that appellate counsel failed to augment the record to include the records introduced into evidence to prove the prior convictions at the sentencing phase of trial. (Pet. 3g-3h.) An indigent defendant is entitled to "a record of sufficient completeness" to prepare an appeal; irrelevant or extraneous portions of the transcript may be omitted. *Mayer v. City of Chicago,* 404 U.S. 189, 194-95 (1971). "It is well-established that 'the State must, as a matter of equal protection, provide indigent prisoners with the basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners.'" *Kennedy v. Lockyer*, 379 F.3d 1041, 1046 (9th Cir. 2004) (quoting *Britt v. North Carolina*, 404 U.S. 226, 227 (1971)). Here, the Reporter's trial transcript provides a record of the evidence of Petitioner's prior convictions that was presented by the prosecution. (Rep. Tr. 757-70.) This record meets Petitioner's right to a record sufficient to afford adequate and effective appellate review, and Young's failure to request augmentation of the record to include the evidence of Petitioner's prior convictions does not fall below an "objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88.

Even if Young's failure to augment the record was deficient, which it was not, Petitioner fails to show that this failure caused prejudice, in other words, that there is a reasonable probability that but for Young's error, Petitioner would have prevailed on appeal. *Id.* at 694. The Reporter's transcript provides a sufficient alternative method of recording the evidence of Petitioner's prior convictions introduced at the second phase of the bifurcated trial. *See Mayer*, 404 U.S. at 194-95. The certified records at issue here would only confirm the references in the trial transcript to the evidence of Petitioner's prior convictions. Petitioner has not demonstrated that the documentary evidence at issue would support his claim on appeal that there was insufficient evidence of his prior convictions to support the sentence enhancements. Petitioner was not prejudiced by counsel's performance, and his claim of ineffective assistance of appellate counsel therefore fails.

United States District Court
For the Northern District of California

**III. Severance**

Petitioner alleges that his right to due process was violated because the trial court denied his motion to sever the trial of the Goodman robbery count from the attempted robbery of the Kanouse count. On direct appeal, the California Court of Appeal upheld the decision of the trial court to allow the two counts to proceed in a joint trial.

**A. Legal Standard**

A federal court may only grant a writ of habeas corpus where the trial court's failure to sever separate counts "results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *United States v. Lane*, 474 U.S. 438, 446 n.8 (1986). "There is no prejudicial constitutional violation unless 'the simultaneous trial of more than one offense ... actually render[ed] Petitioner's state trial fundamentally unfair and hence, violative of due process.'" *Sandoval v. Calderon*, 241 F.3d 765 (9th Cir. 2000) (*quoting Featherstone v. Estelle*, 948 F.2d 1497, 1503 (9th Cir. 1991), *cert. denied*, 534 U.S. 943 (2001). "This prejudice is shown if the impermissible joinder had a substantial and injurious effect or influence in determining the jury's verdict." *Id.* Factors that may be considered in determining whether joinder is unduly prejudicial include the joinder of other crimes where the evidence would otherwise be inadmissible and the joinder of a 'weak' evidentiary case with a 'strong' one. *See id.*

**B. Analysis**

**1. Cross-Admissibility of Evidence**

This Court looks to the analysis of the Court of Appeal in evaluating Petitioner's claim. *LaJoie*, 217 F.3d at 669 n.7.

There is a "high risk of undue prejudice whenever . . . joinder of counts allows evidence of other crimes to be introduced in a trial of charges with respect to which the evidence would otherwise be inadmissible." *United States v. Lewis*, 787 F.2d 1318, 1322 (9th Cir. 1986). Admission at trial of evidence of other crimes is inadmissible unless relevant to prove an issue of fact in the case, such as motive, opportunity, intent, identity or knowledge. *See United States v. Powell*, 587 F.2d 443 (9th Cir. 1978); Federal Rule of Evidence 404(b); California Evidence Code 1101(b). Both the trial court and the California Court of Appeal determined that the evidence of the two crimes would have

been cross-admissible if the offenses were separately tried. The admissibility of the evidence under California law is a state law determination by which this Court is bound. *See Hicks v. Feiock*, 485 U.S. 624, 629 (1988) (holding that a determination of state law by a state appellate court is binding in a federal habeas action).

Although this court is bound by the state court's determination on cross-admissibility of evidence, we must nevertheless determine whether this determination of cross-admissibility deprived Petitioner of a fundamentally fair trial. First, we observe that the trial court did not specify the issues for which the evidence of each count would have been admissible as to the other. Rather, the trial court observed that the evidence would be cross-admissible due to the "substantial similarity between the two crimes," which it enumerated as the common elements of an "elderly women carrying a purse, the location, [and] the time of day." (April 29, 1988 Rep. Tr. 13.) On direct appeal, the California Court of Appeal upheld this determination, and further elucidated that the evidence of each crime was cross-admissible as to the issue of "identity."

There is no question that the major element at issue in Count I was the identity of the Elaine Goodman's assailant. Goodman picked Petitioner from a line-up and positively identified him as her assailant. No other direct or circumstantial evidence implicated Petitioner in that crime; accordingly, the trial as to Count I focused exclusively on the reliability of Goodman's identification. Under California law, evidence of an uncharged crime is admissible to prove identity through a distinctive modus operandi. Cal. Evid. Code § 1101. In upholding the trial court, the California Court of Appeal found that evidence of a modus operandi existed:

> Pursuant to Evidence Code section 1101, subdivision (b), the evidence of each robbery would have been admissible to establish identity, intent, motive, or plan. To be admissible to demonstrate a distinctive modus operandi, the evidence must disclose common marks or identifiers that support a strong inference that the defendant committed both crimes. In our view, the evidence here was admissible to show identity. The two robberies were committed in a similar manner: the victim in both cases was an elderly woman alone on a public street, the robberies were both purse snatchings, and they occurred in the daytime within one and one-half blocks of each other. The two crimes would have been cross-admissible if the offenses had been separately tried.

(May 8, 2000 slip op. at 5.) This Court finds that the state court did not err in determining that the similarities between the two crimes supported an inference that they were

committed by the same actor. *See, e.g.*, *Davis v. Woodford*, 384 F.3d 628, 639 (9th Cir. 2004) (noting that California Supreme Court determined that two crimes were cross-admissible where the incidents were "similar in nature, occurred only a few hours apart, and were in close geographic proximity.")

Identity was not an issue in Count 2, however, because Petitioner was identified at the scene of the crime and apprehended shortly thereafter. Instead, the issue at dispute in Count 2 was whether Petitioner had the requisite intent and knowledge that his daughter would attempt a robbery. The state court decision does not expressly determine that the evidence from Count 1 would have been admissible to show intent and knowledge in a separate trial on Count 2. However, to be relevant on the issue of intent under California law, the degree of similarity between the two crimes need not be as high as that required to prove identity. *See, e.g.*, *People v. Ewoldt*, 7 Cal. 4th 380, 402 (1994) (holding that the "least degree of similarity" between two offenses is required to prove intent.). To establish intent, the two crimes "need only be sufficiently similar to support the inference that the defendant probably harbored the same intent in each instance." *People v. Kipp*, 18 Cal.4th 349, 371 (Cal. 1998) (citations omitted). Because the California Court of Appeal found the crimes sufficiently similar to meet the heightened standard for proving identity, it follows that the crimes were also similar enough to prove intent, which requires less similarity. Accordingly, despite the state court's failure to explicitly determine that evidence in Count 1 would be specifically admissible to prove intent in Count 2, the state court's determination that the crimes were sufficiently similar to prove identity in Count 1 implies that there was also sufficient similarity to prove intent in Count 2.

Consequently, the "high risk of undue prejudice" occurring when joinder allows otherwise inadmissible evidence to be introduced is not implicated by Petitioner's case, because the evidence of each crime was admissible to prove an element of the other. *Lewis*, 787 F.2d at 1322.

**2. <u>Simple and Distinct Evidence</u>**

Even if the evidence of the two crimes were not cross-admissible, joinder would not necessarily result in prejudice so long as the evidence of each crime is simple and distinct and the jury is properly instructed so that it may compartmentalize the evidence. *Davis v.*

United States District Court
For the Northern District of California

*Woodford*, 384 F.3d 628, 639 (9th Cir. 2004). A review of the record indicates that the trial was conducted in a sequential manner, with evidence from Count 1 presented to completion, followed by Count 2. Each count involved separate witnesses testifying to events which took place on separate days. There is little chance that the jury was confused as to which crime each piece of evidence related. Only once during closing argument did the state urge the jury to consider the evidence for the two crimes in concert, and that was on the issue of identity in Count 1, which, as discussed, was clearly permissible.[7] Moreover, the trial court's jury instructions included the following admonition: "Each count charges a distinct crime. You must decide each count separately. The defendant may be found guilty or not guilty of any or all of the crimes charged in Count One and Two. Your finding as to each count must be stated in a separate verdict." (Rep. Tr. 741-42.) Given the simple and distinct evidence on each count and the trial court's instruction to decide the counts separately, this Court finds that Petitioner was not prejudiced by the joinder.

**3. Weight of Evidence**

Finally, Petitioner makes several arguments concerning the nature and relative weight of the evidence in the two counts. First, Petitioner argues that his case presented an instance of the state joining a strong evidentiary count with a weaker count, which created a "spill over" effect allowing the jury to infer guilt on the weaker count based upon the evidence from the stronger count. Second, where accomplice testimony in Count 2 required corroboration, Petitioner argues that joinder impermissibly allowed the jury to use evidence from Count 1 to corroborate this testimony in Count 2. Third, he asserts that evidence that he used his daughter to commit a robbery was inflammatory and might prejudice the jury against him with regard to Count 1.

According to Petitioner, Count 2 was a weaker case, because the state had to prove that he had the knowledge and intent to commit robbery when his daughter approached

---

[7] In his closing argument, the prosecutor stated, "And it's funny if you look at just the August 11 all by itself. All you have is Elaine Goodman's testimony and her identification of him, gives a description and picks him out of the lineup. That's not all you have. Now, you have the other robbery and you can see all the similarities. The only difference, he did this with his daughter the second time. But it was the same location, at the same time, the same type of victim, doing the same type of crime." (Rep. Tr. 679.)

Mrs. Kanouse, and his daughter's testimony regarding his intent had to be corroborated by other independent evidence.[8] Clearly, a danger of prejudice arises when a strong case is joined with a weak case, in that the jury could impermissibly infer "because he did it before, he must have done it again." *Bean v. Calderon*, 163 F.3d 1073, 1085 (9th Cir. 1998) (*quoting United States v. Bagley*, 772 F.2d 482, 488 (9th Cir. 1985)). However, the evidence supporting Count 2 was neither weak, nor significantly less compelling than the evidence supporting Count 1. In proving the element of intent in Count 2, the state offered not only the testimony of Petitioner's daughter, but also presented evidence that Petitioner kept the car running while his daughter made the attempt and then, after she got into his car, sped away from a police officer in pursuit on a bicycle. Furthermore, this Court agrees with the California Court of Appeal's determination that because the evidence regarding neither count was weak, there was no danger of "spill over" from a stronger case to a weaker case. *See People v. Sandoval,* 4 Cal. 4th 155, 173 (1992).

Petitioner also argues that any corroborating evidence derived from Count 2 was weak and circumstantial, and that the jury impermissibly relied on the evidence from Count 1 to corroborate his daughter's incriminating statements. As noted above, there was adequate evidence from Count 2 to corroborate Petitioner's daughter's testimony on intent. Moreover, Petitioner is incorrect when he asserts, without citation to authority, that any corroboration "had to come ONLY from facts presented as to Count II, and none from Count I." Pet. Supp. Traverse at 2. The trial court's instructions to the jury defined corroboration simply as "evidence of some act or fact related to the crime which, if believed by itself without any aid, interpretation, or direction from the testimony of the accomplice, tends to connect the defendant with a commission of the crime charged." (Rep. Tr. 738.) Contrary to Petitioner's assertion, the law does not require that such corroborative evidence be derived solely from facts of the crime itself – only that the evidence should be independent of the accomplice testimony and relate to an act or fact which is an element of the crime. *See Laboa v. Calderon*, 224 F.3d 972, 979 (9th Cir.

[8] Although Petitioner's daughter made statements that Petitioner intended the robbery (which she recanted at trial), a defendant may not be found guilty based upon the testimony of an accomplice unless that testimony is corroborated by independent evidence tending to prove the element at issue. (Rep. Tr. at 738-39.)

United States District Court
For the Northern District of California

2000) (corroboration required by Section 1111 of the California Penal Code "need not corroborate every fact to which the accomplice testified or establish the corpus delicti, but is sufficient if it tends to connect the defendant with the crime in such a way as to satisfy the jury that the accomplice is telling the truth.") (citations omitted); *People v. Garcia*, 84 Cal.App.4th 316, 325 (Cal.App. 1st Dist. 2000) (corroborating evidence "must be related to some act or fact, which is an element of the crime, though it need not be sufficient in itself to establish the elements of the crime.") As discussed above, the evidence of Petitioner's involvement in Count 1 was admissible in Count 2 on the issue of intent, and was wholly independent from the testimony of Petitioner's daughter. Consequently, the jury could permissibly rely on such evidence to corroborate the accomplice testimony regarding the element of intent.

Petitioner's final argument regarding the nature of the evidence is that evidence that he used his daughter to commit the robbery in Count 2 was inflammatory and unduly prejudiced the jury against him with regard to Count 1. One of the factors to be considered under California law on a motion to sever is whether "certain of the charges are unusually likely to inflame the jury against the defendant." *Sandoval*, 4 Cal.4th at 172-173 (1992). As the California Court of Appeal observed, "the danger to be avoided in joinder of offense is that strong evidence of an inflammatory offense might be used to bolster a weak case on another offense." (May 8, 2000 slip op. at 5 (*citing People v. Hill*, 34 Cal.App.4th 727, 734 (1995)). Petitioner himself admits that the evidence from Count 1 was not weaker than the evidence presented in Count 2, which included the purportedly inflammatory element. This Court finds that the considerable strength of both cases against Petitioner obviated any danger that inflammatory evidence would bolster a weaker case, and thus Petitioner was not unduly prejudiced by the joinder of the counts.

It is the conclusion of this Court that the evidence of the two crimes was cross-admissible, so denial of severance was not unduly prejudicial. Furthermore, the evidence of the two crimes was simple and distinct, and neither case was significantly weaker than the other. *See Sandoval*, 241 F.3d at 773. Petitioner's due process rights were not violated by the trial court's denial of severance, so the California courts' denial of this claim was not contrary to, or an unreasonable application of, clearly established United States

United States District Court
For the Northern District of California

Supreme Court authority.

## IV. Other Acts Evidence

In Claim Four, Petitioner contends that the trial court erred in admitting evidence of Petitioner's statements that he wanted to avoid going back to jail and knew where to find a gun that had been used in a murder. Petitioner also claims that his trial counsel's failure to object to the evidence constituted ineffective assistance of counsel. Neither of these contentions merit habeas relief.

### A. Legal Standard

A federal court cannot disturb on due process grounds a state court's decision to admit evidence of prior crimes or bad acts unless the admission of the evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair. *See Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995); *Colley v. Sumner*, 784 F.2d 984, 990 (9th Cir.), *cert. denied*, 479 U.S. 839 (1986). The admission of other crimes evidence violates due process where there are no permissible inferences the jury can draw from the evidence (in other words, no inference other than conduct in conformity therewith). *See McKinney v. Rees*, 993 F.2d 1378, 1384 (9th Cir. 1993); *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991).

### B. Analysis

The Court of Appeal, the highest state court to issue a reasoned decision on this claim, determined that Petitioner's claim had no merit. At trial, one of the arresting officers on August 26, 1997, Officer Morse, testified that when Petitioner was handcuffed and sitting in the backseat of a police car, "I asked him if he knew anything about any homicides or anything that might – we might be able to talk to him about and maybe help him out on this case." (Rep. Tr. 358.) Officer Morse further testified that Petitioner "stated something to the effect that he knew where a gun was hidden that was used in a murder." *Id.* Officer Morse told Officer Wolvington about Petitioner's statement. Officer Wolvington testified on direct examination as follows:

> Q: At some point, did either Officer Mores [sic] or Officer Perez speak with you about the defendant?
> A: Yes, sir.
> Q: And what did they tell you, if can you recall?
> A: That he wanted to work with them.

. . .

United States District Court

For the Northern District of California

Q:    After you were told that, what did you do next with that information?
A:    Talked to Mr. Best and he was courteous to lead me to the gun that was used in a murder.
Q:    And how did this come up?  What was the discussion surrounding the gun?
A:    He wanted to work with the police to lessen his conviction.
MS. BROWN:        Objection.  Speculation.
THE COURT:        Lay the objection.  Sustained.  Lay a greater foundation.  The answer is stricken.
MR. HERMAN:    Q.    What words did he use with you?  Why was he willing to provide you information?
A:    Because he told me he just gotten out of jail, didn't want to go back.  For supplying this, he worked with me.  If he could take me to the gun, I would not press the charges.
Q.    Okay.  Did he lead you to a gun?
A.    Yes, sir, he did.

. . .

Q:    And could you describe the gun?
A:    Was a poor gun.  I couldn't find the serial numbers.  Wore out notches on the handle.
Q:    Okay.  What did you do with it?
A:    I turned it in as evidence to the Oakland Department Section.

(Rep. Tr. 366-68.)

The Court of Appeal rejected Petitioner's challenge to the admission of this evidence on direct appeal and reasoned "[a]s the prosecutor argued below, appellant's statement supported an inference of consciousness of guilt.  While appellant argues that his trial counsel should have objected to the evidence as irrelevant, the trial court was not obligated to exclude it.  The trial court could well have concluded that the probative value of the evidence outweighed its prejudicial effect."  (May 8, 2000 slip op. at 6.)

Petitioner argues that the evidence of his statement and actions leading to the recovery of the gun was prejudicial in two ways: the evidence informed the jury that Petitioner was previously incarcerated and that he knew where a murder weapon was located, which would allow jury to infer criminal activity.  The record, however, does not indicate that the evidence had prejudicial effect.  The testimony about Petitioner's statements did not divulge any information about why Petitioner had been in jail earlier, or what prior crimes he had committed or had been charged with.  Furthermore, Sergeant Yoell subsequently testified that after he spoke to Officer Wolvington about the recovered gun, he contacted homicide investigators and, to his knowledge, the gun did not lead to anything, that is, any homicide investigation. (Rep. Tr. 433.)

Petitioner argues that even if his statements were admissible as evidence of

United States District Court
For the Northern District of California

consciousness of guilt, the lack of a limiting instruction rendered the admission of the evidence of the gun prejudicial. (Pet. for Review in Cal. Supreme Ct. at 8, incorporated by reference into Pet.) There is clearly established law that a criminal defendant has a due process right to adequate instructions on his theory of the case. *Conde v. Henry*, 198 F.3d 734, 739 (9th Cir. 2000). Due process requires that an instruction be given if the evidence supports it. *See Hopper v. Evans*, 456 U.S. 605, 611 (1982); *Miller v. Stagner*, 757 F.2d 988, 993 (9th Cir.), *amended*, 768 F.2d 1090 (9th Cir. 1985). The significance of the omission of an instruction is evaluated by a comparison of the omitted instruction with the instructions that were given. *Murtishaw v. Woodford*, 255 F.3d 926, 971 (9th Cir. 2001) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 156 (1977)). Consequently, whether the failure to issue an instruction violates due process will depend on the evidence presented as well as the overall instructions received by the jury. *Duckett v. Godinez*, 67 F.3d 734, 745 (9th Cir. 1995).

Here, Sergeant's Yoell's testimony that the gun did not lead to evidence of any crimes forecloses any inference that Petitioner was involved in a murder or other crime involving that gun. Furthermore, the prosecution argued in closing that Petitioner's statement indicated consciousness of guilt, and did not insinuate that Petitioner had committed a crime with the gun. After referring to Petitioner driving quickly away from the scene of the robbery, the prosecutor argued "Why else would he be taking off like that? Why else drive like that? Look at the conduct. What does he do? He says to the police officer, 'Hey, man I don't want to get in trouble or something like this? I know a gun that was used in a 187. I'll show you where there's a gun.' What's that. Isn't that consciousness of guilt? Isn't that kind of like saying, got caught, let me give you something, let me give you something that's going to help. That's exactly what that is." (Rep. Tr. 677.) The trial court's omission of a limiting instruction, in light of Officer Yoell's testimony and the limited use of Petitioner's statement to prove consciousness of guilt, was not so prejudicial as to render the trial fundamentally unfair.

Petitioner further argues in Claim Four that trial counsel Brown's failure to object to admission of Petitioner's statements about the gun constitutes ineffective assistance of counsel. As discussed above, even if Brown's failure to object amounts to deficient

United States District Court
For the Northern District of California

performance, the admission of the evidence did not cause prejudice and therefore does not demonstrate ineffective assistance of counsel. This claim is therefore denied.

**CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. Respondent's objections to the order granting Petitioner's motion to expand record are OVERRULED (docket no. 38). The Clerk shall enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

DATED: September 29, 2005

______________________________
JEFFREY S. WHITE
United States District Judge